UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Civil No. 16-cv-81232-MATTHEWMAN

FREESTREAM AIRCRAFT USA LTD.,

    Plaintiff,

vs.

RONNI CHOWDRY;
ATLAS AVIATION LLC;
ATLAS SALES AND LEASING, LLC;
and ATLAS LUXURY JETS LLC,

    Defendants.

_____/



FILED by _____ D.C.

MAY 3 1 2018

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - W.P.B.

## ORDER DENYING THE PARTIES' CROSS-MOTIONS FOR SUMMARY JUDGMENT
### [DEs 167, 172]

**THIS CAUSE** is before the Court upon Defendants, Ronni Chowdry, Atlas Aviation LLC ("Atlas Aviation"), Atlas Aviation Sales & Leasing, LLC ("Atlas Sales"), and Atlas Luxury Jets, LLC's ("Atlas Luxury") (collectively, "Defendants") Motion for Summary Judgment [DE 167] and Plaintiff, Freestream Aircraft USA Ltd.'s ("Plaintiff"), Motion for Summary Judgment or Partial Summary Judgment [DE 172]. The parties have filed Statements of Material Fact and evidence to support their motions and have responded and replied to each motion for summary judgment. *See* DEs 168, 169, 170, 171, 173, 174, 183, 184, 185, 186, 187, 188, 189, 191, 199, 201, and 202. The matters are now ripe for review. The Court has carefully considered the filings and attachments thereto, as well as the entire docket in this case.

## I.    BACKGROUND

Plaintiff is a for-profit corporation founded in 2007. [DE 173-1, p. 1, ¶1; DE 188-1, p. 1, ¶1]. Rebecca Posoli-Cilli is the president and chief operations officer of Plaintiff. *Id.*

1

Defendant Atlas Aviation, LLC ("Atlas Aviation"), was a limited liability corporation incorporated in 2006. [DE 173-1, p. 1 ¶2; DE 188-1, p. 1, ¶2]. Atlas Aviation was wound up in 2013. *Id.* Atlas Aviation Sales & Leasing, LLC ("Atlas Sales") is a limited liability corporation incorporated in 2013. [DE 173-1, p. 1, ¶3; DE 188-1, p. 1, ¶3]. Atlas Sales was not conducting business as of early 2016, and it has been dormant since then. *Id.* Atlas Luxury Jets, LLC ("Atlas Luxury"), is a limited liability company incorporated in April 2016. [DE 173-1, p. 1, ¶4; DE 188-1, p. 1, ¶4]. Atlas Luxury does business in Florida. *Id.* Ronni Chowdry is the sole or controlling shareholder of the corporate defendants and has or had a managing role in the corporate defendants. [DE 173-1, p. 2, ¶5; DE 188-1, p. 1, ¶5]. Posoli-Cilli met Chowdry in 2008, but they had no contact again until early 2013 when Posoli-Cilli contacted Chowdry to request advice on a transaction. *Id.*

In the summer of 2013, Plaintiff earned a referral fee in the amount of $2,580,950.00 from Tyrus Wings, Ltd. ("Tyrus") for Plaintiff's role in the sale of an aircraft. [DE 173-1, p. 2, ¶6; DE 188-1, pp. 1-2, ¶6]. Chowdry and Atlas Aviation had nothing to do with the 2013 transaction. [DE 173-1, p. 2, ¶7; DE 188-1, p. 2, ¶7]. In July of 2013, Posoli-Cilli and Chowdry met in Boca Raton and discussed the Tyrus referral fee. [DE 173-1, p. 2, ¶8; DE 188-1, p. 2, ¶8]. Chowdry volunteered to accept Plaintiff's referral fee into Atlas Aviation's PNC bank account and make transfers in accord with Plaintiff's instructions. *Id.* The parties do not agree as to how much discretion Chowdry had to use the funds. *Id.*

On July 22, 2013, Posoli-Cilli sent Chowdry an email instructing him to prepare a W-9 showing that money was being paid to Atlas Aviation as a "consulting fee," that $1,290,475 was were to be wired to White Mountain Jets, LLC, that $160,000 was to be wired to Plaintiff, and that the remainder of the funds would be "discussed later." [DE 168-1, p. 1, ¶1; DE 183, p. 1,

2

¶1]. Posoli-Cilli instructed Tyrus to transfer the fee into the corporate PNC bank account of Atlas Aviation. [DE 173-1, p. 2, ¶9; DE 188-1, p. 2, ¶9]. Tyrus then had $2,580,950 transferred from its corporate SunTrust Bank account into Atlas Aviation's corporate PNC Bank account. *Id.* Chowdry confirmed receipt of the transfer on July 26, 2013. *Id.*; DE 168-1, p. 1, ¶2; DE 183, p. 1, ¶2]. Chowdry made the two transfers as directed. [DE 173-1, p. 3, ¶11; DE 188-1, p. 2, ¶11]. This left $1,130,475 of the money in Atlas Aviation's bank account. [DE 173-1, p. 3, ¶12; DE 188-1, p. 2, ¶12; DE 168-1, p. 6, ¶12; DE 183, p. 2, ¶6].

Within one week, Chowdry caused substantially all of the remaining $1,130,475 to be transferred from the Atlas Aviation corporate PNC Bank account into the Atlas Sales corporate PNC Bank account. [DE 173-1, p. 3, ¶13; DE 188-1, p. 2, ¶13]. This occurred in at least two separate transactions—one in the amount of $130,355 on July 31, 2013, and one in the amount of $1,000,000 on August 1, 2013. *Id.* Chowdry was the only person with authority to make withdrawals from the Atlas Sales account, and he had spent the $1,130,475 by January 30, 2014, on numerous personal and business expenses. [DE 173-1, pp. 3-4, ¶104; DE 188-1, p. 2, ¶14]. On January 30, 2014, Posoli-Cilli instructed Chowdry to return the $1,130,475. [DE 173-1, p. 4, ¶15; DE 188-1, pp. 2-3, ¶15]. Chowdry stated in a January 30, 2014 email that he could not return the money right away. [DE 173-1, p. 4, ¶16; DE 188-1, p. 3, ¶16]. Posoli-Cilli then sent numerous emails, text messages, voicemails, and phone calls to Chowdry and Atlas Sales' vice president and general counsel, S. Steven Karalekas, demanding that they return the money. [DE 173-1, p. 4, ¶17; DE 188-1, p. 3, ¶17].

In February 2014, Plaintiff retained counsel to help recover the money. [DE 173-1, p. 4, ¶18; DE 188-1, p. 3, ¶18]. Plaintiff's counsel contacted Karlekas on March 6, 2014, and demanded that the money be returned. *Id.* On February 10, 2014, Karalekas sent Plaintiff and

its counsel a letter that itemized and accounted for the money. [DE 173-1, pp. 4-5, ¶19; DE 188-1, p. 3, ¶19]. Karalekas promised that the balance of the funds would be returned to Plaintiff by March 13, 2014. *Id.* The letter was prepared at Chowdry's request and with his authority. [DE 173-1, p. 5, ¶20; DE 188-1, p. 3, ¶20]. On March 6, 2014, Plaintiff responded to Karalekas and Chowdry through Plaintiff's counsel via email. [DE 173-1, p. 5, ¶21; DE 188-1, p. 3, ¶21]. Plaintiff's counsel provided the wire transfer information and a completed IRS form W-9. *Id.* Plaintiff's counsel also asked for confirmation that payment in the amount of $1,130,475 be made no later than March 13, 2014. [DE 173-1, p. 5, ¶21; DE 188-1, p. 3, ¶21]. On March 13, 2014, Chowdry sent an email to Posoli-Cilli in response to a request for payment and informed her that the funds had been used towards an aircraft transaction and that he would need time to secure replacement funds in the event that the transaction did not close. [DE 168-1, p. 2, ¶7; DE 183, p. 2, ¶7].

Chowdry and Posoli-Cilli corresponded from approximately June 7, 2014 to June 20, 2014, regarding the money. [DE 168-1, p. 2, ¶¶8-9; DE 183, pp. 3-4, ¶¶8-9]. On July 7, 2014, Posoli-Cilli sent an email to Chowdry asking for a status update on the payment of the money. [DE 168-1, p. 2, ¶10; DE 183, p. 4, ¶10]. Chowdry responded that he was attempting to close on a transaction to return funds to Plaintiff, that there was no closing date yet, and that the money could be paid from that closing. *Id.* Chowdry sent another email to Posoli-Cilli on September 11, 2014, informing her that he was hoping for the aircraft transaction to close soon so that the resulting money could be paid to Plaintiff. [DE 168-1, pp. 2-3, ¶11; DE 183, p. 5, ¶11]. Chowdry and Posoli-Cilli sent each other additional correspondence about the pending aircraft transaction on October 10, 2014, December 5, 2014, January 14, 2015, and January 20, 2015. [DE 168-1, p. 3, ¶¶12-15; DE 183, p. 5, ¶¶12-15].

4

The parties dispute whether the money is due at this time and how much money Chowdry and/or his companies owe Plaintiff. [DE 173-1, p. 5, ¶¶22-23; DE 188-1, p. 3, ¶¶22-23]. None of the money has been returned to Plaintiff. [DE 173-1, p. 6, ¶24; DE 188-1, pp. 3-4, ¶24]. On January 8, 2016, Plaintiff made a formal demand to Chowdry under Florida's civil theft statute for the return of its money. [DE 173-1, p. 6, ¶28; DE 188-1, p. 4, ¶28].

From July 31, 2013, to January 27, 2014, Chowdry caused over 30 transfers ranging from $10,000 to $1,000,000 to be made from Atlas Aviation's and Atlas Sales' corporate accounts. [DE 173-1, p. 7, ¶30; DE 188-1, p. 4, ¶30]. Between January and November of 2016, Chowdry received at least $741,638.64 from Atlas Sales' accounts. [DE 173-1, p. 7, ¶31; DE 188-1, p. 4, ¶31]. He wrote himself a check in the amount of $541,338.64 from Atlas Sales' account for "Business Expense Reimbursement 2015." *Id.* He also made transfers from his personal account into the Atlas Sales account in the total amount of at least $556,600. *Id.* Chowdry opened Atlas Sales shortly before he closed Atlas Aviation, and he opened Atlas Luxury shortly before he stopped conducting business as Atlas Aviation. [DE 173-1, p. 7, ¶32; DE 188-1, p. 4, ¶32]. Atlas Aviation, Atlas Sales, and Atlas Luxury all have or had the same address. *Id.* Neither Atlas Sales nor Atlas Luxury had or have any employees, computers, office equipment, or other assets. [DE 173-1, p. 7, ¶33; DE 188-1, p. 4, ¶33].

From July to October of 2013, Chowdry made numerous cash withdrawals from the Atlas Sales corporate account in a total amount over $70,000. [DE 173-1, p. 8, ¶34; DE 188-1, p. 4, ¶34]. He has no documentation or recollection as to how the funds were spent. *Id.* Chowdry wrote numerous checks from Atlas Sales' corporate bank account to cover personal expenses, including rent and legal fees. [DE 173-1, p. 8, ¶35; DE 188-1, p. 4, ¶35]. From July to December of 2013, Chowdry made repeated ATM cash withdrawals from the Atlas Sales

5

corporate PNC Bank account for personal expenses, including child care and tips for service providers, and used corporate accounts to pay for personal credit bills, clothing, and utilities. [DE 173-1, p. 8, ¶36; DE 188-1, p. 4, ¶36]. Chowdry frequently used his American Express credit card, which was paid for by Karalekas, to cover many of Chowdry's expenses. [DE 173-1, p. 8, ¶37; DE 188-1, p. 5, ¶37]. The Atlas Sales corporate account is thinly capitalized, and Chowdry occasionally puts in cash from other accounts. [DE 173-1, pp. 8-9, ¶38; DE 188-1, p. 5, ¶38]. The credit card debt for the Atlas Sales corporate account is paid monthly by loans from Karalekas mostly. *Id.*

Karalekas repeatedly made a series of large loans to Atlas Sales and Atlas Luxury. [DE 173-1, p. 9, ¶40; DE 188-1, p. 5, ¶40]. The loans were repaid to Karalekas from the Atlas Sales account, and Karalekas signed the checks to repay those loans. [DE 173-1, p. 9, ¶41; DE 188-1, p. 5, ¶41]. Karalekas was repaid nearly $1,000,000 from November 2015 to January 2016. [DE 173-1, p. 9, ¶42; DE 188-1, p. 5, ¶42]. Karalekas loaned money to Atlas Luxury, which currently owes him about $200,000. [DE 173-1, p. 9, ¶43; DE 188-1, p. 5, ¶43]. Atlas Luxury has no papers documenting that loan. *Id.* Atlas Luxury also repeatedly made significant loans to Chowdry. [DE 173-1, p. 9, ¶44; DE 188-1, p. 5, ¶44]. Atlas Luxury is thinly capitalized. [DE 173-1, p. 9, ¶45; DE 188-1, p. 5, ¶45].

In connection with filing a 2013 tax return, Tyrus submitted the information gathered from a W-9 that it had issued to Atlas Aviation to the IRS, representing that Tyrus paid Atlas Aviation a consulting fee in the amount of $2,580,950. [DE 168-1, p. 2, ¶5; DE 183, p. 2, ¶5].

Atlas Aviation did not file a tax return in 2013, and there is no evidence in the record that it ever filed a tax return. [DE 173-1, p. 10, ¶46; DE 188-1, p. 5, ¶46]. Atlas Sales filed a tax return in 2014, but did not file a tax return in 2013, 2015, or 2016. [DE 173-1, p. 10, ¶47; DE

188-1, p. 5, ¶47]. Atlas Sales' 2014 tax return shows that it lost $126,268 and earned no income. *Id.* Atlas Luxury has not filed a tax return or an extension. [DE 173-1, p. 10, ¶48; DE 188-1, p. 5, ¶48]. Chowdry filed a tax return in 2014, but not in 2013, 2015, or 2016. [DE 173-1, p. 10, ¶49; DE 188-1, p. 5, ¶49].

At Posoli-Cilli's February 5, 2018 deposition, she testified that she had not seen any checks written from Chowdry's personal account to Atlas Luxury. [DE 168-1, p. 4, ¶¶24(a); DE 183, p. 7, ¶24(a)]. Posoli-Cilli could not identify any documents showing a direct transfer of funds from Atlas Sales to Atlas Luxury, could not identify any documents showing a direct transfer of the Tyrus funds to Atlas Luxury, could not identify any documents showing that Atlas Luxury directly withdrew funds from Atlas Sales' bank account, could not identify any documents showing that Atlas Luxury benefited from the money that was initially transferred by Tyrus, and could not identify any documents showing a direct transfer of any Tyrus funds to Atlas Luxury. [DE 168-1, pp. 4-5, ¶¶24(f-k); DE 183, pp. 7-9, ¶24(f-k)].

## II.    **DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [DE 167]**

### A. Motion

Defendants filed their Motion for Summary Judgment [DE 167] and Statement of Material Facts [DE 168-1] on March 15, 2018. In Defendants' motion, they first argue that Plaintiff has failed to state causes of action for civil theft and conversion because an express contract existed as a matter of fact and because the funds were not sufficiently identifiable. [DE 167, pp. 9-14]. Defendants next contend that Plaintiff cannot pierce the corporate veil to obtain a judgment against Atlas Luxury and that Plaintiff has a complete lack of evidence to support its claims against Atlas Luxury. *Id.* at pp. 15-19.

In support of their motion, Defendants filed their Compelled Responses to Plaintiff's

First Set of Interrogatories No. 8 & 9 [DE 167-1]; a July 22, 2013 email from Posoli-Cilli to Chowdry [DE 168-2]; a copy of the wire transfer information from Tyrus to Atlas Aviation [168-3]; email correspondence between Geoff Andrews of Tyrus, Karalekas, and Posoli-Cilli from July 24 and 25, 2013 with a W-9 attached [DE 168-4]; email correspondence between Geoff Andrews of Tyrus and defense counsel from December 2017 [DE 168-5]; Atlas Aviation's PNC Bank statements from May 24, 2013 through December 31, 2013 [DE 168-6]; Atlas Luxury's PNC Bank statements from September 7, 2016 through February 1, 2018 [DE 168-7]; documentation regarding Atlas Aviation's revocation [DE 168-8]; excerpts from the November 1, 2017 deposition of Posoli-Cilli (Plaintiff's 30(b)(6) representative) [DE 169-1]; excerpts from the January 5, 2018 deposition of Posoli-Cilli (Plaintiff's 30(b)(6) representative) [DE 170-1]; the Declaration of Ronni Chowdry [DE 171-1]; email correspondence from Posoli-Cilli to Chowdry dated July 22, 2013 [DE 171-2]; email correspondence from Chowdry to Posoli-Cilli dated March 13, 2014 [DE 171-3]; email correspondence between Chowdry and Posoli-Cilli dated July 7, 2014 [DE 171-4; 171-6]; email correspondence between Posoli-Cilli and Karalekas dated June 2014 [DE 171-5]; email correspondence from Chowdry to Posoli-Cilli dated September 11, 2014 [DE 171-7]; email correspondence from Chowdry to Posoli-Cilli dated October 10, 2014 [DE 171-8]; email correspondence between Chowdry and Posoli-Cilli dated January 2015 [DE 171-9]; email correspondence between Chowdry and Posoli-Cilli dated November and December 2015 [DE 171-10]; and email correspondence between Chowdry and Posoli-Cilli dated January 20, 2015 [DE 171-11].

    B. <u>Response</u>

Plaintiff filed a Response [DE 186] in opposition to Defendants' Motion for Summary Judgment, a Response [DE 183] to Defendants' Statement of Material Facts, a Supplemental

Declaration of Carl E. Goldfarb, Esq. [DE 184] with exhibits attached to oppose Defendants' Motion for Summary Judgment, and a Declaration of Rebecca Posoli-Cilli [DE 185]. Plaintiff first asserts that no contract exists between the parties, as the evidence does not establish the elements of a contract, so any defense to Plaintiff's civil theft and conversion claims based on the existence of a contract is unavailing. [DE 168, pp. 2-10]. Plaintiff next argues that the funds at issue are identifiable, so Defendants' argument that summary judgment should be granted in favor of Defendants as to Plaintiff's conversion and civil theft causes of action is meritless. *Id.* at pp. 10-12. Finally, Plaintiff contends that Defendants' Motion for Summary Judgment should also be denied to the extent it seeks summary judgment on Plaintiff's veil piercing claim as to Atlas Luxury. [DE 186, pp. 13-15]. Plaintiff maintains that Defendants have not addressed the fact that Plaintiff's injuries are ongoing or that Chowdry's use of Atlas Luxury to continue to avoid payment is a proximate cause of Plaintiff's injuries. *Id.* at p. 14.

C. Reply

Defendants filed a Reply [DE 199], in which they first argue that Defendants were authorized to use the funds in question by Plaintiff. *Id.* at p. 4. Defendants next contend that the undisputed material facts establish that the parties had an agreement regarding the funds in question. *Id.* at pp. 4-6. Defendants finally argue that Plaintiff has not presented sufficient evidence to rebut Defendants' arguments as to Atlas Luxury Jets and piercing the corporate veil. *Id.* at pp. 7-8.

### III.    PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [DE 172]

A. Motion

Plaintiff filed its Motion for Summary Judgment or Partial Summary Judgment [DE 172], Statement of Undisputed Material Facts in Support of its Motion for Summary Judgment [DE

173-1], and the Declaration of Carl E. Goldfarb, Esq. [DE 173-2] with numerous exhibits attached[1] on March 15, 2018. First, Plaintiff argues that it is entitled to summary judgment on liability on both its conversion and its civil theft claims. [DE 172, p. 4]. Plaintiff asserts that the undisputed material facts demonstrate that Defendants Chowdry, Atlas Aviation, and Atlas Sales converted its property. *Id.* at pp. 4-7. Plaintiff also asserts that the undisputed material facts show that Chowdry acted with the requisite felonious intent to warrant summary judgment on the civil theft count. *Id.* at pp. 8-11.

Second, Plaintiff contends that it is entitled to compensatory and treble damages or, in the alternative, compensatory and punitive damages because it has proven the elements of civil theft and conversion. [DE 172, pp. 11-13]. Plaintiff also asserts that the Court should temporarily enjoin Chowdry from conducting business or disposing of assets pursuant to section 812.035(6), Florida Statutes. *Id.* at pp. 13-15.

Third, Plaintiff asserts that it is entitled to pierce the corporate veil on its conversion and civil theft counts. [DE 72, pp. 15-21]. Plaintiff contends that the undisputed material facts show that the elements of piercing the veil have been met here. *Id.*

Attached to the Declaration of Carl E. Goldfarb, Esq. [DE 173-2] are the following exhibits: the full transcript of Geoff Andrews' November 6, 2017 deposition [DE 173-3]; the full transcript of Ronni Chowdry's July 18, 2017 deposition [DE 173-4]; the full transcript of Ronni Chowdry's November 2, 2017 deposition [DE 173-5]; the full transcript of Steven Karalekas' July 18, 2017 deposition [DE 173-6]; email correspondence between Chowdry and Posoli-Cilli dated January 20, 2014 [DE 173-9]; email correspondence between Chowdry and Geoff Andrews dated July 2013 [DE 173-11]; email correspondence between Posoli-Cilli and

---

[1] Several of the exhibits were filed under seal. *See* DE 174.

Karalekas dated February 2014 [DEs 173-12; 173-13]; email correspondence from Karalekas to Posoli-Cilli dated February 10, 2014, with draft correspondence from Chowdry attached [DE 173-14]; email correspondence between Chowdry, Posoli-Cilli and an attorney for Plaintiff from February and March 2014 [DEs 173-15; 173-16]; email correspondence from Posoli-Cilli to Chowdry dated April 7, 2014 [DE 173-17]; email correspondence between Posoli-Cilli and Karalekas dated June 2014 [DE 173-18]; email correspondence between Posoli-Cilli, Karalekas, and Chowdry dated June 2014 [DE 173-19]; email correspondence between Karalekas and an attorney for Plaintiff dated March 13, 2014 [DE 173-21]; Defendant Chowdry's Corrected Responses and Objections to Plaintiff's First Set of Interrogatories [DE 173-24]; Defendant Chowdry's Response to Plaintiff's First Request for Admissions [DE 173-25]; documentation regarding the transfer of funds from Tyrus to Atlas Aviation [DE 173-27]; Plaintiff's counsel's Notice of Demand for Treble Damages for Civil Theft dated January 8, 2016 [DE 173-28]; documentation regarding the transfers of funds from Atlas Aviation to Plaintiff and to White Mountain Jets LLC [DE 173-29]; Defendant Atlas Aviation's Responses and Objections to Plaintiff's First Set of Interrogatories [DE 173-33]; Defendant Atlas Sales' Responses and Objections to Plaintiff's First Set of Interrogatories [DE 173-34]; Defendant Atlas Luxury's Responses and Objections to Plaintiff's First Set of Interrogatories [DE 173-35]; the full transcript of James A. Mose's January 16, 2018 deposition [174-1]; the full transcript of Rebecca Posoli-Cilli's November 1, 2017 deposition [DE 174-2]; Atlas Aviation's 2014 tax return [DE 174-3]; check images from bank accounts of Defendants [DE 174-4]; Atlas Luxury's Operating Agreement [DE 174-5]; account statements for Atlas Luxury's PNC Bank accounts [DE 174-6]; check images from Atlas Sales' bank account [DE 174-7]; Defendant Chowdry's Compelled Responses to Plaintiff's First Set of Interrogatories No. 8 & 9 [DE 174-8]; bank statements for

11

Atlas Aviation from June 29, 2013 through July 31, 2013 [DE 174-9]; wiring instructions from Posoli-Cilli to Chowdry dated July 22, 2013 [DE 174-10]; bank statements for Atlas Sales from multiple years [DE 174-11]; and correspondence from PNC Bank to Plaintiff's counsel dated August 2017 [DE 174-12].

On May 14, 2018, Plaintiff also filed a Notice of Filing Defendants' Compelled Amended Responses to Interrogatories and Production Requests [DE 219] with Defendants' discovery responses attached.

B. <u>Response</u>

Defendants filed their Response in Opposition to Defendants' Motion for Summary Judgment [DE 187] and Response [DE 188] to Plaintiff's Statement of Undisputed Material Facts, with attached exhibits. First, Defendants argue that there are genuine issues of material fact that preclude summary judgment in Plaintiff's favor as to conversion. [DE 187, p. 8]. They argue that the undisputed facts show that Defendants were authorized to use the funds, and Plaintiff agreed to Defendants' use of the funds. *Id.* at pp. 8-10. Defendants further assert that there are genuine issues of material fact regarding the "keeping of the funds in question" and that there was insufficient segregation of the funds requested so the funds are not sufficiently identifiable. *Id.* at pp. 10-12.

Second, Defendants argue that there are genuine issues of material fact that preclude summary judgment in Plaintiff's favor as to civil theft. [DE 187, p. 12]. They assert that the same arguments regarding conversion recited above apply to civil theft as well. *Id.* at p. 12. Defendants also maintain that "intent and credibility are both issues to be decided by the fact-finder after presentation of the evidence of trial," so Plaintiff cannot establish felonious intent at this stage in the proceedings. *Id.* at p. 13. Defendants further assert that the parties'

agreement concerning the funds in question precludes summary judgment for Plaintiff as to civil theft or conversion. *Id.* at p. 14.

Third, Defendants contend that there are genuine issues of material fact that preclude summary judgment in Plaintiff's favor as to unjust enrichment. [DE 187, p. 17]. They argue that Chowdry has always maintained that Atlas Aviation is owed a fee as a result of the management of the funds. *Id.* They also argue that they have raised the affirmative defense of unclean hands. *Id.*

Fourth, Defendants maintain that Plaintiff is not entitled to summary judgment on its veil piercing claims against the corporate defendants. [DE 187, p. 18]. They argue that there is "no evidence, whatsoever, to support the Plaintiff's allegations that piercing the corporate veil as to Atlas Luxury Jets, LLC, is appropriate, nor is there any evidence to support the [sic] Atlas Luxury received or used any of the Tyrus funds." *Id.* at p. 21. Defendants assert that the evidence does not show a unity of interest either. *Id.* Finally, Defendants argue that, since summary judgment cannot be granted in Plaintiff's favor as to conversion or civil theft, summary judgment cannot be granted as to piercing the corporate veil. *Id.* at p. 22.

Fifth, Defendants assert that Plaintiff is not entitled to enjoin Defendants from conducting aircraft-related business under section 812.035, Florida Statutes. [DE 187, p. 22]. Defendants argue that there is no evidence to support any finding that Plaintiff was "harmed as a result of Defendants' business related to the purchasing, sale, or leasing of aircraft." *Id.* Defendants also argue that there is no evidence in the record to establish any of the requisite elements of injunctive relief related to the dissipation of assets. *Id.* at p. 24.

13

C. Reply

Plaintiff filed a Reply in Support of Motion for Summary Judgment or Partial Summary Judgment [DE 201], Plaintiff's 2013 tax returns (under seal) [DE 200], and Plaintiff's Reply in Support of Its Statement of Undisputed Facts [DE 202]. According to Plaintiff, the record evidence establishes that it did not authorize Defendants to use the funds for business or personal expenses. [DE 201, p. 1]. Plaintiff further argues that any perceived authorization would not have been valid because it would not have constituted informed consent. *Id.* at p. 2. Plaintiff next argues that Defendants misunderstand the relevant case law regarding identifiability. *Id.* at p. 3. Plaintiff further asserts that the funds in this case are identifiable. *Id.* Plaintiff also contends that there is undisputed record evidence of Defendants' felonious intent, so summary judgment should be granted in Plaintiff's favor as to the civil theft claim. *Id.* at p. 4-5. Next, Plaintiff maintains that no contract exists between the parties. *Id.* at pp. 5-6. Plaintiff asserts that, since it did not move for summary judgment on unjust enrichment, Defendants' arguments regarding unjust enrichment should be ignored. *Id.* at pp. 6-7.

Next, Plaintiff contends that its proffered evidence of Defendants' wrongdoing justifies piercing the corporate veil as to all of the Defendants. [DE 201, pp. 7-9]. According to Plaintiff, "the circumstances of Atlas Luxury's creation, its appearance of illiquidity, and the loan transactions among Luxury, Karalekas, and Chowdry support reverse veil piercing." *Id.* at pp. 7-8. Plaintiff alternatively argues that "Atlas Luxury's status as a successor corporation to Atlas Sales and Atlas Aviation justifies piercing the veil." *Id.* at p. 8-9.

Finally, Plaintiff argues that it is entitled to injunctive relief under section 812.035, Florida Statutes. [DE 201, p. 9]. Plaintiff asserts that the evidence shows that its injuries were "certainly made possible, if they are not outright the product of, Chowdry's fraudulent business

practices." *Id.* at p. 10. Plaintiff next contends that it is not required to establish irreparable harm as argued by Defendants. *Id.* at p. 10. Additionally, Plaintiff argues that "to protect the public interest and prevent Defendants from committing fraud against Freestream and others, the Court should enter an injunction as requested in Plaintiff's Summary Judgment Motion." *Id.*

## IV.    <u>STANDARD OF REVIEW</u>

Federal Rule of Civil Procedure 56(a) states in relevant part that "[a] party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial responsibility of demonstrating to the court by reference to the record that there are no genuine issues of material fact that need to be decided at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

When a moving party has discharged its initial burden, the nonmoving party must "go beyond the pleadings," and, by its own affidavits or by "depositions, answers to interrogatories, and admissions on file," identify specific facts showing there is a genuine issue for trial. *Celotex,* 477 U.S. at 324. The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electr. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

When deciding whether summary judgment is appropriate, the Court must view the evidence and all reasonable factual inferences in the light most favorable to the party opposing the motion. *Witter v. Delta Air Lines, Inc.*, 138 F.3d 1366, 1369 (11th Cir. 1998) (citations and

quotations omitted). Any doubts regarding whether a trial is necessary must be resolved against the moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).

So long as the non-moving party has had an ample opportunity to conduct discovery, the non-movant must come forward with affirmative evidence to support its claim. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986). "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990). If the evidence advanced by the nonmoving party "is merely colorable, or is not significantly probative, then summary judgment may be granted." *Anderson*, 477 U.S. 242, 249-50.

## V.    DISCUSSION AND ANALYSIS

### A. Defendants' Motion for Summary Judgment

### i.    Civil Theft and Conversion

Defendants argue that summary judgment must be entered in their favor because an express contract existed as a matter of fact and because the funds were not sufficiently identifiable. Plaintiff disputes both of these assertions by Defendants. Under Florida law, "[t]o prove the existence of a contract, a plaintiff must plead: (1) offer; (2) acceptance; (3) consideration; and (4) sufficient specification of the essential terms." *Kolodziej v. Mason*, 774 F.3d 736, 740–41 (11th Cir. 2014) (citing *Vega v. T–Mobile USA, Inc.*, 564 F.3d 1256, 1272 (11th Cir. 2009)). "An oral contract is subject to all basic requirements of contract law, *St. Joe Corp.*, 875 So.2d at 381, and mutual assent is a prerequisite for the formation of any contract, *see Gibson v. Courtois*, 539 So.2d 459, 460 (Fla.1989)." *Id.* at 741.

The Court has reviewed the record evidence cited by Defendants to support their argument that an express contract existed as a matter of fact. *See* DE 169-1 at 89:23-25, 90:1-17; 171-1 at

16

¶¶7-24.  The evidence cited by Defendants simply does not support Defendants' contention that the undisputed material facts in this case show that an oral express agreement existed.  As the Court previously found in its Order Denying Ronni Chowdry's Motion to Dismiss Amended Complaint and/or for More Definite Statement [DE 157, p. 7], "the simple use of the word 'agreed' does not constitute an allegation of an actual express contract, either verbal or written."  The evidence cited by Defendants does not establish by way of undisputed material facts consideration, sufficient specification of the essential terms, or mutual assent.

Defendants next contend that Plaintiff has failed to establish that the money at issue is identifiable and cite *Batlle v. Wachovia Bank, N.A.*, No. 10-21782-CIV, 2011 WL 1085579 (S.D. Fla. Mar. 21, 2011), for this premise.  The *Batlle* court explained that, "Florida law establishes that [a] claim of conversion of money in a bank account is proper where the money is deposited into an account designed to keep money segregated and identifiable, such as a trust or escrow account, or where there is an obligation or fiduciary duty to keep money segregated."  *Id.* at *2.

Defendants also rely on the case of *Fla. Desk, Inc. v. Mitchell Int'l, Inc.*, 817 So. 2d 1059 (Fla. 5th DCA 2002).  In *Florida Desk*, the court found that there was "no evidence that there was any obligation on [the defendant's] part to keep intact or hold a specific fund to deliver to Florida Desk.  Florida Desk did not require a deposit before shipping and did not require Mitchell to hold a deposit before accepting the purchase order. The fact that the amount is certain does not make an 'identifiable fund.'"  *Id.* at 1061.  The court therefore reversed the trial court's judgment that the defendant had committed an act of civil theft.

Other courts have explained, however, that "conversion of money may also exist when a party pays money to another for a specific purpose, as long as the money is "delivered at one time, by one act and in one mass."  *Galstaldi v. Sunvest Communities USA, LLC*, 637 F. Supp. 2d 1045,

1059 (S.D. Fla. 2009)(quoting *Joseph v. Chanin,* 940 So.2d 483 (Fla. 4th DCA 2006)). "Several courts, applying Florida law on conversion, have found a claim for conversion may lie when a party takes money from another, as long as the money is sufficiently identifiable." *Id.* (citing *Rosenthal Toyota, Inc. v. Thorpe,* 824 F.2d 897, 902 (11th Cir.1987); *Florida Dept. Ins. v. Debenture Guar.,* 921 F.Supp. 750, 757 (M.D.Fla.1996); *Masvidal v. Ochoa,* 505 So.2d 555 (Fla. 5th DCA 1987)).

The Eleventh Circuit agreed with this logic in *Tambourine Comercio Internacional SA v. Solowsky,* 312 F. App'x 263, 272 (11th Cir. 2009). In that case, the court found that the plaintiff had "produced sufficient evidence for a reasonable jury to find that the six million dollars in trust was specific and identifiable", the funds were delivered at one time by one act, a wire transfer, and in one mass." *Id.* The court explained that the "suit was not brought to enforce a general obligation to pay money, but to recover the actual ten million dollars that [the defendant] allegedly stole from it." *Id.*

Defendants argue that *Solowsky* is distinguishable because Plaintiff did not request that the money be kept in a separate escrow account or trust account when Plaintiff had the money delivered into Atlas Aviation's bank account. [DE 167, p. 12]. Defendants cite to paragraphs 1, 7-15, and 19 of their Statement of Material Facts [DE 168-1] and paragraphs 22-24 of the Chowdry Declaration [DE 171-1] to support their position that the undisputed facts show that Plaintiff's money was not intended to be kept in a separate, segregated account.

Plaintiff relies on *Republic of Haiti v. Crown Charters, Inc.*, 667 F. Supp. 839, 846 (S.D. Fla. 1987), for the premise that a claim for conversion is "not defeated where checks and wire transfers are used as conduits for stolen property so long as the property is identifiable at the start and sufficiently retains its identity along the chain." *See* DE 186 at pp. 11-12. Plaintiff argues

that the funds are traceable because Atlas Aviation's money market bank account had no money in it when the transfers were made on Plaintiff's behalf. *Id.* at p. 12. Plaintiff also explains that no additional monies were moved into the account, other than small interest payments, before its funds were depleted. *Id.* Plaintiff cites to the bank statements to support its argument. *Id.*

Based on the argument and evidence before the Court, the Court finds that there is a genuine issue of material fact as to whether Plaintiff's funds were sufficiently identifiable. The crux of Defendants' argument is that Plaintiff's funds were not intended to be kept in a separate, segregated account. However, the case law presented by Plaintiff establishes that, since the money may have retained its identity along the chain, it may not have been necessary for Plaintiff to request that the funds be kept in a separate, segregated account. Given the facts before the Court, Defendants' Motion for Summary Judgment is due to be denied as to both the conversion and civil theft counts. The undisputed facts do not establish that the parties had an agreement or that Plaintiff's failure to explicitly request that the funds be held in a segregated account is fatal to its claims.

ii.    Piercing the Corporate Veil

Defendants argue that, since it is undisputed that Atlas Luxury was not incorporated until almost three years after the transfers in questions took place and two years after the funds were exhausted, Atlas Luxury could not have been used to cause Plaintiff's injuries. *See* DE 167, pp. 15-19. Defendants also contend that there is no evidence to support Plaintiff's position that piercing the corporate veil is appropriate or to show that Atlas Luxury received or used any of the funds at issue. *Id.* at p. 17. Finally, Defendants assert that there is no unity of interest, as required to pierce the corporate veil. *Id.*

"Piercing the corporate veil in Florida traditionally requires two elements: first, 'the

19

corporation is in actuality the alter ego of the stockholders,' and second, 'it was organized or after organization was employed by the stockholders for fraudulent or misleading purposes.'" *N. Am. Clearing, Inc. v. Brokerage Computer Sys., Inc.*, 666 F. Supp. 2d 1299, 1306 (M.D. Fla. 2009)(quoting *Dania Jai–Alai Palace, Inc. v. Sykes,* 450 So.2d 1114, 1120 (Fla. 1984)). Additionally, even if it is established that the corporation is the alter ego of the stockholders, there still must be a strong showing of "improper conduct" by the corporation. *Id.* The remedy of piercing the corporate veil is also available to "hold the corporation liable for the debts of controlling shareholders where the shareholders have formed or used the corporation to secrete assets and thereby avoid preexisting personal liability." *Estudios, Proyectos e Inversiones de Centro Am., S.A. (EPICA) v. Swiss Bank Corp. (Overseas) S.A.*, 507 So. 2d 1119, 1120 (Fla. 3d DCA 1987). "Where a creditor proves that a controlling shareholder organized or used the corporation to deceive or defraud his personal creditors, the separate corporate existence will be disregarded and the corporation and the shareholder will be treated as one and the same." *Id.* at 1120–21.

"In defining improper conduct for purposes of piercing the corporate veil, the Eleventh Circuit quoted the Supreme Court of Florida, stating: '[i]mproper conduct is present only in cases in which the corporation was a mere device or sham to accomplish some ulterior purpose or where the purpose is to evade some statute or to accomplish some fraud or illegal purpose.'" *Id.* (quoting *Johnson Enters. of Jacksonville, Inc. v. FPL Group, Inc.,* 162 F.3d 1290, 1320 (11th Cir. 1998)). "It is not enough to show that the corporation's business affairs [have] been rather poorly handled." *In re Hillsborough Holdings Corp.*, 176 B.R. 223, 245 (M.D. Fla. 1994) (quoting *Ally v. Naim,* 581 So.2d 961 (Fla. 3d DCA 1991)). "When conducting an analysis concerning a fraud to avoid the liabilities of a predecessor, a Florida court has observed: '[the] bottom line question is

whether each entity has run its own race, or whether there has been a relay-style passing of the baton from one to the other.'" *In re Aqua Clear Techs., Inc.*, 361 B.R. 567, 578 (Bankr. S.D. Fla. 2007) (quoting *Orlando Light Bulb Serv., Inc. v. Laser Lighting & Elec. Supply, Inc.,* 523 So.2d 740, 742 n. 1 (Fla. 5th DCA 1988)).

As Defendants are basically asserting that there is a complete dearth of evidence to support Plaintiff's attempt to pierce the corporate veil, the Court simply needs to review the evidence cited by Plaintiff to determine if there is, in fact, sufficient evidence to support Plaintiff's claim. Plaintiff cites to an abundance of evidence that establishes that Plaintiff demanded the funds from Chowdry and Karalekas on January 8, 2016 [DE 109-1], Atlas Sales ceased doing business in 2016 [DE 173-6], Atlas Luxury was formed on April 8, 2016 [DE 174-5], Atlas Luxury has never had more than $200 in its bank account [173-1 at ¶ 45], has never generated any revenues [DE 179-6], has borrowed at least $200,000 from Karalekas [DE 173-1 at ¶ 43], and has lent Chowdry at least $26,800 [DE 173-1 at ¶ 44]. The evidence cited by Plaintiff establishes that there is at least a genuine issue of material fact as to whether piercing the corporate veil is appropriate in this case. The fact that Atlas Luxury was created after the funds were received and spent does not determine the issue since Plaintiff is arguing a continuing injury and that Chowdry's use of Atlas Luxury to avoid payment up until the present time is a proximate cause of Plaintiff's injury.

iii.    Unjust Enrichment

As to Defendants' Motion for Summary Judgment on Plaintiff's unjust enrichment count, the Court declines to rule on that portion of Defendant's Motion for Summary Judgment at this time. This is because Plaintiff has filed a pending Motion for Leave to File Second Amended Complaint [DE 228], in which Plaintiff seeks to abandon or delete the unjust enrichment account. Therefore, the Court will not rule on Defendants' Motion for Summary Judgment as to the unjust

enrichment count until after the Motion for Leave to File Second Amended Complaint becomes ripe. Once the Court rules upon Plaintiff's Motion to Amend [DE 228], the Court will then determine whether it is necessary to address Defendant's Motion for Summary Judgment on Plaintiff's unjust enrichment count.

### B. Freestream's Motion for Summary Judgment

### i. Conversion

Plaintiff argues that the undisputed evidence establishes that Chowdry converted Plaintiff's money. [DE 172, p. 5]. In response, Defendants assert that the evidence shows that Chowdry, Atlas Aviation, and Atlas Sales' use of the funds was authorized, disclosed, and agreed to by Plaintiff. [DE 187, p. 8]. Defendants contend that Posoli-Cilli did not object to Chowdry using the funds towards an aircraft transaction. *Id.* at pp. 9-10. Defendants also argue that the parties had an express agreement regarding the funds and that Plaintiff never requested that the funds be segregated, as required by the relevant case law. *Id.* at pp. 10-12.

Under Florida law, "[a] conversion consists of an act in derogation of the plaintiff's possessory rights, and any wrongful exercise or assumption of authority over another's goods, depriving him of the possession, permanently or for an indefinite time, is a conversion." *Palm Beach Golf Ctr.-Boca, Inc. v. John G. Sarris, D.D.S., P.A.*, 781 F.3d 1245, 1258–59 (11th Cir. 2015) (quoting *Star Fruit Co. v. Eagle Lake Growers, Inc.,* 160 Fla. 130, 132, 33 So.2d 858, 860 (1948)). "Conversion is an act of dominion wrongfully asserted over another's property inconsistent with his ownership therein." *Id.* (quoting *Warshall v. Price,* 629 So.2d 903, 904 (Fla. 4th DCA 1993)). If a defendant was authorized to use the plaintiff's property, the conversion claim fails. *TCC Air Servs., Inc. v. Schlesinger*, No. 05 80543 CIV-Ryskamp, 2006 WL 3694639, at *3 (S.D. Fla. Dec. 13, 2006).

As stated above, the Court finds that there are material disputed issues of fact regarding whether the parties had an express contract and regarding whether Plaintiff sufficiently requested that the funds be kept segregated and whether Plaintiff was required to do so in this case. The Court also finds that there are issues of material fact as to whether Posoli-Cilli authorized Chowdry and the corporate defendants to use the funds toward an airplane transaction. *See* 168-1 at ¶¶7-15. Therefore, the Court cannot grant summary judgment in Plaintiff's favor as to the conversion count.

    ii.    <u>Civil Theft</u>

Under Florida law, a plaintiff may recover treble damages in a civil lawsuit against a person who is liable for theft, robbery, or other related crimes. Fla. Stat. § 772.11 (2012). "To establish a claim for civil theft, a party must prove that a conversion has taken place and that the accused party acted with criminal intent." *Heldenmuth v. Groll*, 128 So. 3d 895, 896 (Fla. 4th DCA 2013)(citing *Gasparini v. Pordomingo*, 972 So.2d 1053, 1056 (Fla. 3d DCA 2008)). "If there was no factual basis to support a claim for conversion, there can be no cause of action for civil theft." *Id.* Because the Court does not find that the undisputed material facts establish conversion, the Court cannot find that the undisputed material facts establish civil theft.

Additionally, "[i]n order to establish an action for civil theft, the claimant must prove the statutory elements of theft, as well as criminal intent." *Fahey v. Am. Home Mortg. Servicing, Inc.*, No. 11-62544-CIV, 2012 WL 6114849, at *4 (S.D. Fla. Dec. 10, 2012) (quoting *Fla. Desk, Inc.*, 817 So.2d at 1060). "Summary judgment is usually not appropriate in a civil theft action because the determination whether a defendant had criminal intent should normally be left to the fact finder." Here, even if Plaintiff had established that summary judgment as to the conversion

claim were appropriate, the Court would deny summary judgment as to the civil theft claim because Plaintiff cannot establish Defendants' criminal intent by way of undisputed material facts.

### iii.  Damages

Since the Court is not granting summary judgment on the conversion or the civil theft claims, there is no need to address the damages argument made in Plaintiff's motion.

### iv.  Piercing the Corporate Veil

The Court has set forth the elements of piercing the corporate veil above. Additionally, "[u]nder Florida law, mere failure to observe corporate formalities alone is not enough. Rather, Florida courts require 'proof of *deliberate* misuse of the corporate form—tantamount to fraud—before they will pierce the corporate veil. Thus, absent proof of fraud or ulterior motive by the shareholder, the corporate veil shall not be pierced.'" *John Daly Enterprises, LLC v. Hippo Golf Co.*, 646 F. Supp. 2d 1347, 1353 (S.D. Fla. 2009) (quoting *In re Hillsborough Holdings Corp.,* 166 B.R. 461, 469 (Bankr. M.D. Fla. 1994)). "What is controlling is the parent company's 'subjective motivation, not the effect of [its] actions' in observing or failing to observe corporate formalities." *Id.* "A party seeking to pierce the corporate veil and prove alter ego liability must show both a blurring of corporate lines, such as ignoring corporate formalities or using a corporation for the member's personal interest, and that the member used the corporation for some illegal, fraudulent or other unjust purpose." *Auspech, Inc. v. Wireless Digital Grp., LLC*, No. 13-21757-CIV, 2014 WL 12571405, at *4 (S.D. Fla. Apr. 30, 2014).

Here, the Court has reviewed evidence cited by Plaintiff [DE 173-1 at ¶¶2-4, 5, 32-35, 37-43, 46-49; DE 173-3 at 51:3-24, 52:1-22, 188:7-189:11; DE 173-5 at 313:4-25] to support its position that summary judgment should be granted in its favor as to piercing the corporate veil. Plaintiff has not presented sufficient undisputed facts to establish that Atlas Luxury was organized

24

and used for improper or fraudulent purposes or that the fraudulent or improper use of the corporate form caused injury to Plaintiff. *See Solnes v. Wallis & Wallis, P.A.*, 15 F. Supp. 3d 1258, 1269 (S.D. Fla. 2014), *aff'd sub nom. Solnes v. Wallis & Wallis, P.A*, 606 F. App'x 557 (11th Cir. 2015) (holding that, because the plaintiff failed to set forth any facts that suggest that a corporation was formed or operated for an improper or fraudulent purpose or that the corporation's agent dominated and controlled the corporation to the extent that it lacked an independent existence, summary judgment could not be granted as to the plaintiff's piercing the corporate veil claim). Put another way, there are genuine issues of material fact that preclude the Court from granting summary judgment as to Plaintiff's piercing the corporate veil claim.

     v.    Temporary Enjoining of Defendants' Business Activities

Since the Court is not granting summary judgment on the conversion or the civil theft claims, there is no need to address the temporary enjoining of Defendants' business activities argument made in Plaintiff's motion.

## VI.   **CONCLUSION**

In sum, the Court finds that there are genuine disputes of material fact and that neither Plaintiff nor Defendants are entitled to summary judgment. This case shall therefore proceed to jury trial. Based on the foregoing, it is hereby ORDERED AND ADJUDGED that Defendants' Motion for Summary Judgment [DE 167] is DENIED.[2] It is also hereby ORDERED AND ADJUDGED that Plaintiff's Motion for Summary Judgment or Partial Summary Judgment [DE

---

[2] The Court reserves ruling on Defendants' Motion for Summary Judgment as to Plaintiff's unjust enrichment count, as Plaintiff has filed a pending motion to amend its complaint to drop the unjust enrichment count. *See* DE 228. The Court will address Defendants' Motion for Summary Judgment as to Plaintiff's unjust enrichment count after its rules on Plaintiff's motion to amend.

172] is DENIED. All pending issues shall be resolved at the upcoming jury trial where the trier of fact will have an opportunity to hear and consider all the relevant and probative evidence.

The case is specially set for a 4-day jury trial beginning on Monday, June 28, 2018, at 9:30 a.m. before United States Magistrate Judge William Matthewman at the U.S. Courthouse located at 701 Clematis Street, Courtroom Six, Third Floor, West Palm Beach, Florida. The parties and their counsel shall be ready and present for the jury trial at that time. The parties are also reminded that a calendar call is set for 2:00 p.m. on June 8, 2018, before the undersigned at the same location.

**DONE and ORDERED** in Chambers at West Palm Beach, Palm Beach County, Florida, this 31 ˢᵀ day of May, 2018.

WILLIAM MATTHEWMAN
United States Magistrate Judge